IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOSE ANGEL LOPEZ,

     Petitioner,               No. 2:12-cv-0029 MCE EFB P

     vs.

MATTHEW CATE,

     Respondent.            FINDINGS AND RECOMMENDATIONS

                             /

     Petitioner is a state prisoner without counsel proceeding with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He challenges a 2009 judgment of conviction entered against him in the Sacramento County Superior Court on charges of second degree murder with use of a firearm. Petitioner seeks federal habeas relief on the grounds that: (1) his conviction is not supported by sufficient evidence; and (2) the trial court violated his federal constitutional rights when it precluded the introduction of testimony from his brother. Upon careful consideration of the record and the applicable law, the undersigned recommends that petitioner's application for habeas corpus relief be denied.

////

////

////

1

**I.   Background[1]**

Defendant Jose Angel Lopez appeals following a conviction for second degree murder in the shooting death of his sister's boyfriend, Omar Hernandez. (Pen.Code, § 187, subd. (a).) Defendant admits the shooting but claims he acted in the heat of passion, provoked by Hernandez's physical abuse of defendant's sister.

Thus, he contends, the trial court erred in excluding defense evidence that defendant's brother "possibly" told defendant before the shooting about Hernandez beating the sister on a prior occasion; and the conviction must be reduced to voluntary manslaughter due to insufficient evidence of malice. We shall affirm the judgment.

BACKGROUND

Evidence adduced at trial included the following:

On June 18, 2008, in the early evening, Hernandez engaged in a physical fight with his girlfriend – defendant's sister, Gladys – in the street near the home of Gladys's mother.[2] Gladys phoned a family member and was joined by her brother, Esteban, and sisters, Aimee and Pearl. Esteban testified that Gladys and Hernandez both had bloody faces. Gladys was crying hysterically but said she was all right. Esteban saw it as a case of mutual combat. The sisters slapped Hernandez and yelled at him for hitting a woman. But Gladys told them to leave him alone. When Esteban hit Hernandez, Gladys grabbed Esteban's collar and pulled him to the ground.

Defendant arrived, ran up, said something to Hernandez about "you like to hit my sister again," and shot him with a revolver at close range as Hernandez tried to back away from the family.

A pathologist testified that Hernandez died of a gunshot wound to the back of the head, fired no more than a few inches from the head. The bullet entered the back of the head on the right side and exited near the left ear. Hernandez also had fresh scrapes and bruises on his upper body.

////

---

[1] In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following factual summary.

[2] For clarity and ease of reference, we use the first names of members of the Lopez family.

2

> Defendant testified as follows:
>
> He received a phone call that Gladys's boyfriend was beating her up in the street. Defendant had previously been told about a prior occasion in which Hernandez had punched Gladys in the face. Defendant went to the scene with a loaded gun. He did not intend to use the gun but usually carried it with him since he was shot in a drive-by shooting a year earlier.
>
> When defendant arrived, he saw his sister with a bloody face and scratches on her neck. He thought she had been choked. He asked Hernandez, "why you hittin' my sister again." Defendant saw Esteban punch Hernandez and get pulled to the ground by Gladys. Defendant and Hernandez (who was several inches shorter than defendant) swung at each other. One of Hernandez's punches landed on defendant, who fell to his knee, got up, pulled the gun from his waistband, aimed it at Hernandez's head, fired the gun, and then fled the scene. According to defendant, he "just lost it," "kind of like blacking out." He was not angry at being hit but was already "beyond angry" about his sister being hit by Hernandez. When asked if he pulled the trigger "[k]nowing good and well you wanted to kill Omar, correct?," defendant said, "No, I-well, yeah ."
>
> Aimee testified for the defense, stating that defendant and Hernandez threw punches at each other. Her testimony was impeached with her prior statement to a police officer that defendant ran to Hernandez and began beating him up.
>
> The trial court instructed the jury on murder and on voluntary manslaughter because of sudden quarrel or heat of passion.
>
> The jury found defendant not guilty of first degree murder but guilty of second degree murder and found the firearm allegations to be true.
>
> Defendant was sentenced to a term of 40 years to life in prison (an indeterminate term of 15 years to life for the murder, plus a consecutive term of 25 years to life for the firearm enhancement).

Dckt. No. 16-1 at 1-4.

After petitioner's judgment of conviction was affirmed by the California Court of Appeal, he filed a petition for review in the California Supreme Court. Resp't's Lodg. Doc. 5. On January 12, 2011, that petition was summarily denied. Resp't's Lodg. Doc. 6.

Petitioner commenced the instant action by filing a petition for writ of habeas corpus in this court on January 5, 2012. Dckt. No. 1.

## II. Analysis

### A. Standards for a Writ of Habeas Corpus

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. *See Wilson v. Corcoran*, 562 U.S.___, ___, 131 S. Ct. 13, 16 (2010); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Park v. California*, 202 F.3d 1146, 1149 (9th Cir. 2000).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the state court decision. *Stanley v. Cullen*, 633 F.3d 852, 859 (9th Cir. 2011) (*citing Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). Nonetheless, "circuit court precedent may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." *Stanley*, 633 F.3d at 859 (quoting *Maxwell v. Roe*, 606 F.3d 561, 567 (9th Cir. 2010)).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. *Price v. Vincent*, 538 U.S. 634, 640 (2003).

4

Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.[3] *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Williams*, 529 U.S. at 413; *Chia v. Cambra*, 360 F.3d 997, 1002 (9th Cir. 2004). In this regard, a federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 412. *See also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *Lockyer*, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'"). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S.___,___,131 S. Ct. 770, 786 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*,131 S. Ct. at 786-87.

If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. *Delgadillo v. Woodford*, 527 F.3d 919, 925 (9th Cir. 2008); *see also Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of §

////

---

[3] Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding." *Stanley*, 633 F.3d at 859 (quoting *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004)).

5

2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

The court looks to the last reasoned state court decision as the basis for the state court judgment. *Stanley*, 633 F.3d at 859; *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. *Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Richter*, 131 S. Ct. at 784-85. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." *Id.* at 785 (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)). Similarly, when a state court decision on a petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. *Johnson v. Williams*, 133 S.Ct. 1088, 1091 (2013).

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). *Stanley*, 633 F.3d at 860; *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." *Himes*, 336 F.3d at 853. Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." *Richter*, 131 S. Ct. at 784.

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal

6

habeas court must review the claim de novo. *Stanley*, 633 F.3d at 860; *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006); *Nulph v. Cook,* 333 F.3d 1052, 1056 (9th Cir. 2003).

### B. Petitioner's Claims

#### 1. Insufficient Evidence

In his first ground for relief, petitioner claims that the evidence is insufficient to support his conviction for second degree murder. Dckt. No. 1 at 8-9, 13-18. He argues that "the essential element that the killing was committed with malice aforethought is not supported by the evidence." *Id.* at 8. Petitioner contends that he shot Hernandez, the victim, in the heat of passion. *Id.* He provides three reasons for this: (1) petitioner "had very recently heard that Hernandez was beating up petitioner's sister Gladys;" (2) when he arrived on the scene, he saw injuries to Gladys which suggested that Hernandez had choked Gladys; and (3) he had heard about a prior beating that Hernandez had "inflicted" on Gladys, which led him to conclude that "Hernandez was a persistent abuser of Gladys." *Id.* at 8, 16, 18. Petitioner also states that before he shot Hernandez, "he and Hernandez engaged in a fistfight." *Id.* at 16. In the traverse, petitioner argues that there was significant trial evidence to support his version of the events. Dckt. No. 19 at 7-14.

In the last reasoned state court decision on this claim, the California Court of Appeal rejected petitioner's arguments, reasoning as follows:

> Defendant argues his conviction of second degree murder must be reduced to voluntary manslaughter because the evidence established that he acted in the heat of passion, not with malice. We are not persuaded.
>
> The malice required for murder may be express or implied. (Pen.Code, § 188.) It is express when there is manifested a deliberate intention unlawfully to take away the life of a fellow creature. (*Ibid.*) It is implied when "no considerable provocation appears" or when the killing results from an intentional act dangerous to human life with a high probability of death. (*Ibid.*; *People v. Swain* (1996) 12 Cal.4th 593, 601.) Malice may be inferred from the defendant's acts and the circumstances of the case. (*People v. Smith* (2005) 37 Cal.4th 733, 741.)

7

> Voluntary manslaughter is the unlawful killing of a human being without malice, upon a sudden quarrel or heat of passion. (Pen.Code, § 192, subd. (a).) Provocation and heat of passion must both be demonstrated. (*People v. Steele* (2002) 27 Cal.4th 1230, 1252.) Heat of passion requires an objective and a subjective component. (*Ibid.*) The defendant must actually, subjectively, kill under the heat of passion, and there must be such a passion as would naturally be aroused in the mind of an ordinarily reasonable person under the given circumstances. (*Ibid.*)

Dckt. No. 16-1 at 6-8. After restating those required elements and the standards applicable to satisfy them, the state appellate court pointed to the specific evidence in the record from which the jury could have reasonably concluded that malice had been proven beyond a reasonable doubt.

> Here, there was substantial evidence of malice, express or implied. Defendant admitted that he pulled the trigger intending to kill Hernandez. Even without this testimony, the evidence showed that defendant arrived on the scene with a loaded gun, went directly to Hernandez (who was trying to back away from the family of his girlfriend), aimed the revolver at Hernandez's head at close range, pulled the trigger, and fled the scene. Contrary to defendant's view, the jury was not required to believe defendant's description of his subjective state of mind. And the jury was not required to conclude that the circumstances, viewed objectively, would have aroused a reasonable person to kill in the heat of passion. Both Gladys and Hernandez had bloody faces and scrapes, indicating mutual combat, and defendant saw Gladys defend Hernandez by pulling Esteban to the ground when he hit Hernandez. It appeared that Gladys could take care of herself.
>
> Defendant argues his case is comparable to *People v. Elmore* (1914) 167 Cal. 205 (hereafter *Elmore*). There, the only eyewitness to a killing testified that he and the defendant were sitting in a saloon next to an elderly man who was in a state of stupor from intoxication. The victim entered and began to "play roughly" with the drunk, slapping him on the head and knocking him out of his chair. (*Id.* at p. 207.) The defendant told the victim to stop. (*Id.* at p. 208.) The victim sought a fight with the defendant, who declined. The victim dragged the elderly man out of the chair. The defendant stood up, with a small pocketknife open in his hand. The victim charged the defendant and hit him twice before the defendant stabbed the victim in the neck with the knife. (*Ibid.*) The Supreme Court reversed the murder conviction, finding "nothing in the evidence that will reasonably justify the

8

> conclusion that the wound was inflicted otherwise than as a result of . . . sudden passion . . . . All the circumstances tend to show [the defendant] was acting in good faith and really desired to avoid any quarrel or difficulty." (*Id.* at p. 211.)
>
> However, *People v. Camargo* (1955) 130 Cal.App.2d 543 noted that *Elmore* – insofar as it authorized an appellate court to reverse a conviction if there exists a reasonable doubt as to the defendant's guilt – no longer represents the law because, in *People v. Newland* (1940) 15 Cal.2d 678, the California Supreme Court disapproved of prior cases similar to *Elmore* – although not expressly mentioning *Elmore*. (*People v. Camargo, supra*, 130 Cal.App.2d at pp. 549-550.)
>
> In any event, this case is factually distinguishable from *Elmore* because the circumstances here did not show that defendant desired to avoid any quarrel or difficulty.
>
> In sum, substantial evidence supports defendant's conviction for second degree murder.

Dckt. No. 16-1 at 6-8.

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). There is sufficient evidence to support a conviction if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "[T]he dispositive question under *Jackson* is 'whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.'" *Chein v. Shumsky*, 373 F.3d 978, 982 (9th Cir. 2004) (quoting *Jackson*, 443 U.S. at 318).

In conducting federal habeas review of a claim of insufficient evidence, "all evidence must be considered in the light most favorable to the prosecution." *Ngo v. Giurbino*, 651 F.3d 1112, 1115 (9th Cir. 2011). "*Jackson* leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial," and it requires only that they draw "'reasonable inferences from basic facts to ultimate facts.'" *Coleman v. Johnson*,___ U.S. ___, 132 S.Ct.

2060, 2064 (2012) ( per curiam ) (citation omitted). "'Circumstantial evidence and inferences drawn from it may be sufficient to sustain a conviction.'" *Walters v. Maass*, 45 F.3d 1355, 1358 (9th Cir.1995) (citation omitted).

"A petitioner for a federal writ of habeas corpus faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds." *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005). In order to grant relief, the federal habeas court must find that the decision of the state court rejecting an insufficiency of the evidence claim reflected an objectively unreasonable application of *Jackson* and *Winship* to the facts of the case. *Ngo*, 651 F.3d at 1115; *Juan H.*, 408 F.3d at 1275 & n.13. Thus, when a federal habeas court assesses a sufficiency of the evidence challenge to a state court conviction under AEDPA, "there is a double dose of deference that can rarely be surmounted." *Boyer v. Belleque*, 659 F.3d 957, 964 (9th Cir. 2011). The federal habeas court determines sufficiency of the evidence in reference to the substantive elements of the criminal offense as defined by state law. *Jackson*, 443 U.S. at 324 n.16; *Chein*, 373 F.3d at 983.

After reviewing the state court record in the light most favorable to the jury's verdict, this court concludes that there was sufficient evidence introduced at petitioner's trial from which a rational trier of fact could have found beyond a reasonable doubt that petitioner committed second degree murder. For the reasons expressed by the California Court of Appeal, there was evidence introduced at petitioner's trial from which the jury could have found that petitioner did not act in the heat of passion, but committed second degree murder with malice. This is so regardless of the fact that there might have been other trial evidence to support petitioner's argument that he was acting in the heat of passion. The question in this federal habeas action is not whether there was evidence from which the jury could have found for the petitioner on this issue. Rather, in order to obtain federal habeas relief on this claim, petitioner must demonstrate that the state courts' denial of relief with respect to his insufficiency of the evidence arguments was an objectively unreasonable application of the decisions in *Jackson* and *Winship* to the facts

of this case. Petitioner has failed to make this showing, or to overcome the deference due to the state court's findings of fact and its analysis of this claim. Accordingly, he is not entitled to federal habeas relief.

### 2. Confrontation Clause

In his next ground for relief, petitioner claims that the trial court violated his Sixth Amendment right to confront the witnesses against him and his Fourteenth Amendment right to due process and to present a defense when it precluded the defense from cross-examining petitioner's brother Esteban about the possibility that Esteban told petitioner prior to the shooting that Hernandez had beaten Gladys on a previous occasion. Dckt. No. 1 at 19-23. Petitioner argues that Esteban's testimony "would have provided [crucial] corroboration to petitioner's testimony that he knew about the prior beating and was provoked by it on the day of the shooting." *Id.* He claims that "a defendant who asserts a defense of heat of passion to a murder charge is entitled to elicit evidence to corroborate his own testimony that he was provoked into killing the victim." *Id.* Petitioner also argues that the testimony was "very relevant to petitioner's defense that he killed Hernandez in the heat of passion." *Id.* at 22. He contends that it is "reasonably probable that the jury would not have convicted petitioner had the trial court permitted the defense to elicit Esteban's testimony on cross-examination about Hernandez's prior beating of Gladys." *Id.* at 23.

The California Court of Appeal rejected these arguments, reasoning as follows:

> Defendant contends the trial court erred in precluding the defense from cross-examining Esteban about the "possibility" that he told defendant before the shooting that Hernandez beat Gladys on a prior occasion in the four months they dated. Defendant considers this evidence critical to his provocation defense because provocation can arise as a result of a series of events over time. We conclude there was no error.
>
> The trial court conducted a hearing outside the jury's presence (Evid.Code, § 402), in which Esteban testified that he witnessed Hernandez beating Gladys in public on a prior occasion, about three or four weeks before the shooting. The prosecutor asked, "did you tell anybody about that," to which Esteban answered,

11

> "No." Defense counsel inquired, "is there a possibility that you told [defendant] about it." Esteban answered, "Possibly, yeah." After another round of questioning, in which Esteban answered "no" to the prosecutor and "possibly" to defense counsel, the prosecutor asked, "What makes you think there's a possibility, a possible chance that you told him?" Esteban answered, "I don't know."
>
> The trial court excluded the evidence because "it's speculative in nature" and "I don't think you've laid a sufficient foundation that he told your client." The court saw "serious doubt" as to whether Esteban told defendant. Defense counsel said it was a jury call. The court added that it would exclude the evidence pursuant to Evidence Code section 352 as more prejudicial than probative. The court also stated, "I think the witness is not to be believed based on there's a lack of foundation," and "possibility" was not an appropriate standard.
>
> Defendant now argues that, because the trial court said the witness was "not to be believed," it erroneously took a jury question away from the jury. We disagree. In context, the court did not rule that the witness lacked credibility, but that the witness could not be used for the purpose sought by defendant, i.e., as evidence that Esteban told defendant about a prior beating.
>
> At best for defendant, Esteban would testify he "possibly" told defendant about the prior beating. The trial court was correct in excluding this proffered testimony because it was mere speculation. (*People v. Babbitt* (1988) 45 Cal.3d 660, 681 ["Except as otherwise provided by statute, no evidence is admissible except relevant evidence. (Evid.Code, § 350.) Relevant evidence is evidence 'having any tendency in reason to prove or disprove any disputed fact . . . .' [Citation.] The trial court is vested with wide discretion in determining the relevance of evidence . . . [but] has no discretion to admit irrelevant evidence. [Citation.] 'Speculative inferences that are derived from evidence cannot be deemed to be relevant to establish the speculatively inferred fact in light of Evidence Code section 210, which requires that evidence offered to prove or disprove a disputed fact must have a tendency in reason for such purpose.' [Citation.]"].)

Dckt. No. 16-1 at 4-5.

Criminal defendants have a constitutional right, implicit in the Sixth Amendment, to present a defense; this right is "a fundamental element of due process of law." *Washington v. Texas*, 388 U.S. 14, 19 (1967). *See also Crane v. Kentucky*, 476 U.S. 683, 687, 690 (1986); *California v. Trombetta*, 467 U.S. 479, 485 (1984); *Webb v. Texas*, 409 U.S. 95, 98 (1972);

12

*Moses v. Payne*, 555 F.3d 742, 757 (9th Cir. 2009). "Necessary to the realization of this right is the ability to present evidence, including the testimony of witnesses." *Jackson v. Nevada*, 688 F.3d 1091, 1096 (9th Cir. 2012). However, the constitutional right to present a defense is not absolute. *Alcala v. Woodford*, 334 F.3d 862, 877 (9th Cir. 2003). "[A] defendant does not have an absolute right to present evidence, no matter how minimal its significance or doubtful its source." *Jackson*, 688 F.3d at 1096. "Even relevant and reliable evidence can be excluded when the state interest is strong." *Perry v. Rushen*, 713 F.2d 1447, 1450 (9th Cir. 1983).

A state law justification for exclusion of evidence does not abridge a criminal defendant's right to present a defense unless it is "arbitrary or disproportionate" and "infringe[s] upon a weighty interest of the accused." *United States v. Scheffer*, 523 U.S. 303, 308 (1998). *See also Crane*, 476 U.S. at 689-91 (discussion of the tension between the discretion of state courts to exclude evidence at trial and the federal constitutional right to "present a complete defense"); *Greene v. Lambert*, 288 F.3d 1081, 1090 (9th Cir. 2002). Further, a criminal defendant "does not have an unfettered right to offer [evidence] that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Montana v. Egelhoff*, 518 U.S. 37, 42 (1996) (quoting *Taylor v. Illinois*, 484 U.S. 400, 410 (1988)). "A habeas petitioner bears a heavy burden in showing a due process violation based on an evidentiary decision." *Boyde v. Brown*, 404 F.3d 1159, 1172 (9th Cir. 2005).

The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." This right, extended to the States by the Fourteenth Amendment, includes the right to cross-examine witnesses. *Cruz v. New York*, 481 U.S. 186, 189 (1987), citing *Pointer v. Texas*, 380 U.S. 400, 404 (1965). The Confrontation Clause does not prevent trial judges from imposing limits on cross-examination. *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986) ("the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might

13

wish" (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (per curiam ) (emphasis in original)). In fact, "a trial judge retains 'wide latitude' to limit defense counsel's questioning of a witness without violating a defendant's Sixth Amendment rights." *Carriger v. Lewis*, 971 F 2d 329, 333 (9th Cir. 1992). *See also Michigan v. Lucas*, 500 U.S. 145, 149 (1991). A trial judge may impose reasonable limits on cross-examination "based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Van Arsdall*, 475 U.S. at 679. "The extent of cross-examination with respect to an appropriate subject of inquiry is within the sound discretion of the trial court. It may exercise a reasonable judgment in determining when the subject is exhausted." *Alford v. United States*, 282 U.S. 687, 694 (1931).

Confrontation Clause violations are subject to harmless error analysis. *Whelchel v. Washington*, 232 F.3d 1197, 1205-06 (9th Cir. 2000). "In the context of habeas petitions, the standard of review is whether a given error 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Christian v. Rhode*, 41 F.3d 461, 468 (9th Cir. 1994) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)). Factors to be considered when assessing the harmlessness of a Confrontation Clause violation include the importance of the testimony, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony, the extent of cross-examination permitted, and the overall strength of the prosecution's case. *Van Arsdall*, 475 U.S. at 684[4]; *United States v. Norwood*, 603 F.3d 1063, 1068-69 (9th Cir.), *cert. denied* ___U.S.___, 131 S. Ct. 225 (2010).

The United States Supreme Court has acknowledged a "traditional reluctance to impose constitutional restraints on ordinary evidentiary rulings by state trial courts." *Crane*, 476 U.S. at 689. Accordingly, a state court's evidentiary ruling, even if erroneous, is grounds for federal

---

[4] Although *Van Arsdall* involved a direct appeal and not a habeas action, "there is nothing in the opinion or logic of *Van Arsdall* that limits the use of these factors to direct review." *Whelchel*, 232 F.3d at 1206.

14

habeas relief only if it renders the state proceedings so fundamentally unfair as to violate due process. *Estelle*, 502 U.S. at 68-70. The exclusion of evidence pursuant to a state evidentiary rule is unconstitutional only where it "significantly undermined fundamental elements of the defendant's defense." *United States v. Scheffer*, 523 U.S. 303, 315 (1998).

Here, the trial court excluded Esteban's testimony pursuant to Cal. Evidence Code § 352, which allows a court, in its discretion, to exclude evidence "if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." After hearing Esteban's equivocal testimony at the § 402 hearing, the trial court reasonably determined that his testimony was not relevant because it was based on speculation and a "lack of foundation." Reporter's Transcript on Appeal (RT) at 152. The record here fully supports that conclusion. The trial court's decision to exclude Esteban's testimony that there was a "possibility" he told petitioner that Hernandez had assaulted Gladys in the past, especially given his testimony that he had not told anyone about this assault, was permissible as a reasonable limit on cross-examination based on the court's concern about the introduction of evidence that was only marginally relevant, if at all. The trial court's ruling was not disproportionate to the purposes the evidentiary rules were intended to serve and did not unduly infringe upon petitioner's constitutional rights. Nor did it render petitioner's trial fundamentally unfair.

In any event, the Court of Appeals for the Ninth Circuit has observed that the United States Supreme Court has not "squarely addressed" whether a state court's exercise of discretion to exclude testimony violates a criminal defendant's right to present relevant evidence. *Moses v. Payne*, 555 F.3d 742, 758-59 (9th Cir. 2009). Accordingly, the decision of the California Court of Appeal in this case that the trial court's discretionary evidentiary ruling did not violate the federal constitution is not contrary to or an unreasonable application of clearly established United States Supreme Court precedent and may not be set aside. *Id. See Wright v. Van Patten,*

15

552 U.S. 120, 126 (2008) (per curiam) (relief is "unauthorized" under Section 2254(d)(1) when the Supreme Court's decisions "given no clear answer to the question presented, let alone one in [the petitioner's] favor," because the state court cannot be said to have unreasonably applied clearly established Federal law). *See also Brown v. Horell,* 644 F.3d 969, 983 (9th Cir. 2011) ("Between the issuance of *Moses* and the present, the Supreme Court has not decided any case either 'squarely address[ing]' the discretionary exclusion of evidence and the right to present a complete defense or 'establish[ing] a controlling legal standard' for evaluating such exclusions."), *cert. denied* ___ U.S. ___, 2011 WL 4901379 (Nov. 14, 2011); *Summerlin v. Busby*, No. EDCV 11-0805-AG (JEM), 2011 WL 7143168 (C.D. Cal. Dec. 16, 2011) (state court decision rejecting petitioner's claim that the trial court violated his right to due process when it excluded impeachment evidence pursuant to Cal. Evid. Code § 352 not contrary to or an unreasonable determination of federal law).

Even assuming arguendo that the trial court's exclusion of Esteban's testimony was constitutional error, the error could not have had a "substantial and injurious effect or influence in determining the jury's verdict" under the circumstances of this case. *Brecht*, 507 U.S. at 623. Esteban's testimony that he didn't tell anyone about seeing Hernandez hit Gladys, but that there was a "possibility" he told petitioner about it, certainly did not establish conclusively that petitioner knew about the prior assault. Thus, it would have added little, if anything, to petitioner's defense that he acted in the heat of passion. Further, as the California Court of Appeal found, there was substantial evidence that petitioner harbored malice when he shot Hernandez, and a corresponding lack of evidence that a reasonable person would have killed Hernandez in the heat of passion under the circumstances of this case. Finally, petitioner testified that he had been told about Hernandez's prior assault on Gladys. Accordingly, Esteban's testimony, to the extent it was conclusive of anything, would have been merely cumulative of petitioner's testimony.

For all of these reasons, petitioner is not entitled to federal habeas relief on this claim.

### C. Request for Evidentiary Hearing

Petitioner requests an evidentiary hearing on his claims.

Pursuant to 28 U.S.C. § 2254(e)(2), an evidentiary hearing is appropriate under the following circumstances:

> (e)(2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that-
>
> (A) the claim relies on-
>
> (I) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense;

28 U.S.C. § 2254(e)(2).

Under this statutory scheme, a district court presented with a request for an evidentiary hearing must first determine whether a factual basis exists in the record to support a petitioner's claims and, if not, whether an evidentiary hearing "might be appropriate." *Baja v. Ducharme*, 187 F.3d 1075, 1078 (9th Cir. 1999). *See also Earp v. Ornoski*, 431 F.3d 1158, 1166 (9th Cir. 2005); *Insyxiengmay v. Morgan*, 403 F.3d 657, 669-70 (9th Cir. 2005). A federal court must take into account the AEDPA standards in deciding whether an evidentiary hearing is appropriate. *Schriro*, 550 U.S. at 474. A petitioner must also "allege[] facts that, if proved, would entitle him to relief." *Schell v. Witek*, 218 F.3d 1017, 1028 (9th Cir. 2000).

The court concludes that no additional factual supplementation is necessary and that an evidentiary hearing is not appropriate with respect to the claims raised in the instant petition. In addition, for the reasons described above, petitioner has failed to demonstrate that the state courts' decision on his claims is an unreasonable determination of the facts under § 2254(d)(2).

*See Schriro*, 550 U.S. at 481.  Accordingly, an evidentiary hearing is not necessary or appropriate in this case.

### III. Conclusion

For all of the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).  In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case.  *See* Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED: May 23, 2013.

_____
EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE